UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH RODRIGUEZ,<br>　　　　Plaintiff,<br>　　v.<br>AKIMA INFRASTRUCTURE SERVICES, LLC, et al.,<br>　　　　Defendants. | Case No. 16-cv-3607-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Sarah Rodriguez brings this case asserting a claim under the federal Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); a claim under the California Family Rights Act, Cal. Lab. Code § 12945.2 ("CFRA"); and a claim of wrongful termination based on the alleged FMLA/CFRA violations. Defendants Akima Infrastructure Services LLC and Akima LLC now seek summary judgment as to all causes of action, or, in the alternative, partial summary judgment. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS defendants' motion.

**BACKGROUND**

Defendant Akima Infrastructure Services LLC ("AIS") is a small company and a wholly-owned subsidiary of defendant Akima LLC ("Akima"). See Declaration of Terrance Reichert ("Reichert Decl.") in support of defendants' motion, at ¶ 2. AIS provides staff augmentation services for federal agencies and specializes in recruiting, interviewing, and screening supplemental labor to ensure that they will support and advance clients' missions. Id.

Lawrence Livermore National Security ("LLNS") has a prime contract with the United States Department of Energy and the National Nuclear Security Administration. Id. ¶ 3. LLNS and AIS entered into a subcontract for AIS to provide staff augmentation services for LLNS and Lawrence Livermore National Laboratory ("LLNL"). Id. When LLNS has a need for support staff, LLNS has the option of initiating an internal requisition to fill a position using LLNS resources to hire directly, or LLNS can request that AIS, the established subcontractor for staff augmentation, recruit candidates and hire an AIS supplemental labor employee. Id. If the latter, LLNS compensates AIS for providing the service and the employee pursuant to a multiplier in the contract. Id.

Mr. Reichert, who is the AIS General Manager over the supplemental labor contract with LLNS, manages the project for LLNS. Id. ¶ 1. He works with the support staff situated in the Project Management Office at LLNL, where he manages both the AIS employees located in the Project Management Office and the supplemental labor personnel that AIS provides to LLNS. Id.

Mr. Reichert became the General Manager more than three years ago. Id. At the time, the Project Management Office had a staff of 10 "legacy" employees, who had previously supported the prior contractor, and several of whom did not have fully delineated roles or responsibilities. Id. ¶ 4; see also Declaration of Billie D. Wenter ("Wenter Decl." Exh. A (Deposition of Terrance Reichert ("Reichert Depo.")) at 38, 61.[1] As of September 2014, the AIS Project Management Office had 11 staff members, including Jennifer Miller, the Employment Manager, and David Andrade, a recruiter. Reichert Decl. ¶ 6. Mr. Andrade worked for AIS as a recruiter from August 8, 2010 until January 12, 2015. Id.; see also Reichert Depo. at 61-62. Ms. Miller began her employment with AIS on August 8, 2010. Reichert Decl. ¶ 7.

Mr. Reichert states that when he became responsible for managing AIS' supplemental labor contract with LLNS, one of his goals was to review and evaluate the

---

[1] In his deposition, Mr. Reichert testified that he "came into the office" in July 2013.

2

core deliverables of the contract and restructure the Project Management Office using existing resources to optimize operations and improve the performance and quality of services AIS delivered to both its LLNS client and the AIS supplemental labor personnel working at LLNL. Id. ¶ 4.

In September, 2014, Mr. Reichert initiated a plan to expand the project office staff to position for growth, with the expectation of increasing AIS' headcount of supplemental labor for LLNS. Id. ¶ 5. Mr. Reichert knew that the legacy contractor that previously provided supplemental labor had at one time maintained a headcount 25% above AIS' then-current levels. Id. An essential part of Mr. Reichert's plan to grow headcount required improved face-to-face interaction with the large number of LLNS hiring managers and Authorized Requestors responsible for deciding whether to hire through AIS. Id.

Mr. Reichert states that Ms. Miller possessed strong business knowledge related to staff augmentation services and an in-depth cultural understanding of working with LLNS at LLNL. Id. ¶ 7. For this reason, Mr. Reichert determined that AIS would benefit by having Ms. Miller devote an increasing amount of time interacting with the large number of LLNS hiring managers across LLNL to facilitate project improvement goals. Id. Thus, as part of the planning for an increased headcount and to facilitate project improvement goals, he decided to create a new position within the Project Management Office – the Employment Specialist/Recruiter. Id. ¶ 5; see also Exh. 1 to Reichert Decl. (AIS' description of duties of Employment Specialist/Recruiter position).

In her capacity as Employment Manager, Ms. Miller was directly responsible for, and performed all job duties that would be assigned to the proposed new Employment Specialist/Recruiter position. Id. ¶ 8; Reichert Depo. at 38. Mr. Reichert believed that the creation and staffing of the new position – which would combine recruiting and employment duties – would allow significantly more time for Ms. Miller, as a manager and an essential AIS Project Management Office resource, to work outside of the office in a strategic capacity to establish and build relationships with LLNS customers and acquire

3

1 additional opportunities for supplemental labor personnel headcount growth.  Reichert

2 Decl. ¶ 8; Reichert Depo. at 51, 56-57.

3       Plaintiff alleges that in 2014, Mr. Andrade "decided to leave" AIS, and that on September 5, 2014, Mr. Andrade emailed her, telling her that AIS was "looking for a Recruiter/Employment Specialist to replace [him]," and asking her to review the job description and advise whether she was interested in the job.  Declaration of Sarah Rodriquez ("Rodriquez Decl.") in opposition to defendants' motion, at ¶ 3.  Plaintiff claims she spoke to Mr. Andrade and told him she was interested, and that he then "arranged for an interview" with Mr. Reichert and Ms. Miller.  Id. ¶ 4.

      According to plaintiff, AIS decided to hire another candidate, and Ms. Miller told her AIS "would not be hiring because I lacked a college degree and because my salary demand was too high."  Id. ¶ 5.  However, plaintiff claims, Ms. Miller emailed her in late September 2014 to say that the offer to the other candidate had "fallen through," and that AIS would like to hire her.  Id. ¶ 6; see also Reichert Decl. ¶¶ 7-9.

      Plaintiff started her employment with AIS on October 7, 2014.  Wenter Decl. Exh. B (Deposition of Sarah Rodriguez ("Pltf's Depo.")) at 36-37; Rodriquez Decl. ¶ 6.  Ms. Miller began transitioning the duties of an Employment Specialist to plaintiff at the start of plaintiff's employment.  Reichert Decl. ¶ 9.  Plaintiff's position also included recruitment of supplemental labor personnel.  Reichert Decl. Exh. 1; Rodriguez Decl. ¶ 7.

      According to Mr. Reichert, plaintiff earned a considerably higher salary than a person in the standard recruiting position, Reichert Decl. ¶ 11; and plaintiff's scope of responsibility was broader than simply recruiting in terms of skills, responsibilities, and decision-making.  Reichert Decl. Exh. 1; Reichert Depo. at 35-36, 61-62; see also Pltf's Depo. at 39, 41.  According to Mr. Reichert, as plaintiff advanced through AIS, she began handling more employment-side responsibilities.  Reichert Decl. ¶ 9; Reichert Depo. at 35-36, 50-52; see also Pltf's. Depo. at 39, 41-43, 54, 56.

      In her opposition to defendants' motion, plaintiff asserts that while the job description provided by AIS for the Employment Specialist/Recruiter position lists a few of

4

the duties that she performed, it states many duties that were never part of her job responsibilities. Rodriquez Decl. ¶ 16. However, rather than focusing on the duties listed in the job description for Employment Specialist/Recruiter, Ms. Rodriguez discusses the job duties listed in defendants' motion, where defendants provide a summary of duties discussed in general (and not uniformly comprehensible) by plaintiff and Mr. Reichert in their depositions. See Defs' Motion at 5 (citing Pltf's Depo. at 39, 41-43, 54, 56; Reichert Depo. at 35-36, 50-52); see also Reichert Decl. ¶ 9. These included "determining the prevailing wages, leveling the position and the salary, preparing documentation to justify higher wages, known as a 'justification packet,' determining the classification for a position, conducting new hire orientations, and providing desk audits, which involve reclassifying current employees, rather than prospective employees." Defs' Motion at 5.

Of these, plaintiff claims in her recently-filed opposition declaration, the duties of "determining prevailing wages" and "preparing justification packets" are standard duties of a recruiter, and were performed at AIS by both herself and Mr. Menig; and the duties of "leveling the position," "leveling the salary," "determining the classification for a position," and "desk audits" are not duties of a recruiter, and were performed at AIS by Ms. Miller; Rodriguez Decl. ¶¶ 17-21, 23. She adds that she did "assist" Ms. Morrow with the weekly "new hire" orientations. Id. ¶ 22.

In early spring 2015, plaintiff informed Ms. Miller (her supervisor) that she was pregnant and would need to take a leave of absence beginning in the summer. Rodriguez Decl. ¶ 9. Plaintiff asserts that Ms. Miller began to search for a replacement for plaintiff while she was on leave, and that Ms. Miller told her she intended to hire the replacement to begin in May so plaintiff would have time to train the replacement. Id. ¶ 10. In May 2015, with Mr. Reichert's approval, Ms. Miller recruited, interviewed, and hired a Junior Recruiter – Peter Menig. Reichert Decl. ¶ 11. The classification for the position within AIS was "Administrative Assistant." Id. The wage-determined hourly pay for this position was $30.87, which Mr. Reichert states was "considerably lower than the salary for the Employment Specialist/Recruiter position." Reichert Decl. ¶ 11.

5

Also in May, 2015, Erika Post, a Personnel Assistant in the Project Management Office and an AIS employee since August 8, 2010, voluntarily resigned to accept a career growth position outside of LLNL. Reichert Decl. ¶ 10. Ms. Post was tasked with various administrative/clerical duties in support of Employment, Recruiting, and Human Resources functions. Id. Ms. Post's decision to leave AIS to further her career coincided with the Project Management Office's search for a Junior Recruiter. Id.

Plaintiff asserts Ms. Miller hired Mr. Menig as her (plaintiff's) replacement, and that she (plaintiff) helped train Mr. Menig. Rodriguez Decl. ¶ 11. However, according to Mr. Reichert, Mr. Menig performed the same recruiting duties as Mr. Andrade, and essentially filled Mr. Andrade's position. Reichert Decl. ¶ 11 & Exh. 2 (AIS' description of duties of Junior Recruiter position). Mr. Reichert asserts that Mr. Menig was hired to perform recruiting processes and practices only, and that he has the same role at AIS today. Reichert Decl. ¶ 11.

Defendants assert that during plaintiff's employment, AIS was supportive of plaintiff's absences related to her pregnancy. Plaintiff took time off for doctor's appointments, and Ms. Miller made arrangements for plaintiff to have access to e-mail on her personal computer so that she could work from home. Pltf's Depo. at 114-115, 166, 168, 170.

In June 2015, plaintiff formally requested the leave of absence due to her pregnancy. Pltf's Depo. at 93-94; Wenter Decl. Exh. E. At the time of plaintiff's request, she was not eligible for leave under the FMLA or CFRA because she had not met the 12-month length of service requirement. Pltf's Depo. at 116, 172-173; Wenter Decl. Exh. 4F. AIS approved plaintiff's leave under the Pregnancy Disability Leave Law. Wenter Decl. Exh. F; Pltf's Depo. at 93-94. Her last day of work at AIS was June 5, 2015. Pltf's. Depo. at 97.

Plaintiff's leave started on June 8, 2015. Rodriguez Decl. ¶ 12. Plaintiff testified in her deposition that Mr. Reichert and Ms. Miller both expressed their support, when she went on leave, and sincerely assured her that they looked forward to her return. Pltf's

6

1  Depo. at 87-91, 135-136, 168-169.  Plaintiff testified further that no one at the Project
2  Management Office made any discriminatory or disparaging remarks about her in
3  connection with her leave.  Pltf's Depo. at 130-131, 136.

4  Also in June 2015, Mr. Reichert first noticed that LLNS was converting a significant
5  number of AIS' contract labor positions, which meant that AIS' LLNS customer was going
6  directly to AIS' supplemental labor personnel, the AIS employees, and offering those
7  employees the same positions as LLNS employees.  Reichert Decl. ¶ 12; Reichert Depo.
8  at 74.  AIS had not previously experienced this elevated number of conversions.
9  Reichert Decl. ¶ 12.  Mr. Reichert noted that AIS could not stop LLNS from offering
10 employment to an existing AIS employee, and AIS' agreement with LLNS did not have a
11 component that provided compensation to AIS for conversions.  Reichert Depo. at 74.

12 During the previous four contract years, AIS had seen an average annual rate of
13 39 LLNS conversions.  Reichert Decl. ¶ 13; Reichert Depo. at 76-77.  However, for fiscal
14 year 2015 (October 1, 2014, through September 30, 2015), the total number of LLNS
15 conversions, where AIS personnel were directly offered LLNS employment, was 164,
16 representing a 420% increase over the previous four-year running average.  Reichert
17 Decl. ¶ 13.

18 Mr. Reichert saw a trend taking place with a variety of its customers within LLNS.
19 According to Mr. Reichert, NIF, the largest section of LLNS that AIS supports, led the
20 way.  Reichert Depo. at 77-79, 82.  At one point, NIF staffed over 40 percent of AIS'
21 supplemental labor, and Mr. Reichert asserts that the anticipated number of NIF
22 conversions alone was upwards of 100 to 120 employees during the next six to ten
23 months.  Reichert Depo. at 78-79, 91-93; Reichert Decl. ¶ 12 & Exh. 3; Wenter Decl. Exh.
24 I.  Mr. Reichert found it necessary to mitigate the effect of the conversions, because of
25 the impact on the Project Management Office's revenue, AIS' supplemental labor
26 headcount, and the appropriate size office's support staff.  Reichert Depo. at 79; Reichert
27 Decl. ¶ 13.

28 To this end, Mr. Reichert began exploring options to enable the Project

Management Office to adapt to the loss of revenue caused by the increased conversions. Reichert Depo. at 79.  Mr. Reichert states that he considered numerous options for restructuring the Project Management Office staff.  Reichert Decl. ¶ 14.  He reviewed each position held by the 12 employees in the Project Management Office staff and considered how the scope of work directly affected successful completion of contract deliverables as defined in AIS' agreement with LLNS.  Reichert Decl. ¶ 14.  He also considered alternatives to on-site payroll and information technology support functions, such as using shared services or outsourcing, but he determined that it was impractical. Id.; Reichert Depo. at 99.

Mr. Reichert eventually determined that the employment function was overstaffed for the current amount of work and the continued loss of employees, and in particular, concluded that the prior addition of the Employment Specialist/Recruiter position resulted in significant overlap with the skills, knowledge, and abilities of Ms. Miller, the Employment Manager.  Reichert Decl. ¶ 14.

Mr. Reichert concluded that Ms. Miller could handle the majority of plaintiff's duties, and Ms. Morrow, the Employee Relations Manager, could also absorb some of those duties.  Reichert Decl. ¶ 15; Wenter Decl. Exh. C (Deposition of Debra Morrow ("Morrow Depo.") 41-43, 57; Wenter Decl. Exhs. J, K.  By process of elimination and in considering the most practical, efficient, and financially sound solution, Mr. Reichert made the decision to eliminate plaintiff's position.  Reichert Decl. ¶¶ 14-15; Reichert Depo. at 89-91; Wenter Decl. Exh. J.  Mr. Reichert contends that plaintiff's leave of absence did not factor into his decision.  Reichert Decl. ¶ 18.

Plaintiff gave birth to twins on August 5, 2015.  Pltf's Depo. at 116; Cplt ¶ 11; Rodriguez Decl. ¶ 13.  At that time, plaintiff had not yet satisfied the 12-month service requirement under the FMLA/CFRA, and, thus, was on an unprotected leave.  AIS continued to grant her a personal leave of absence.  Pltf's Depo. at 116.  Plaintiff completed the 12-month waiting period for eligibility under the FMLA/CFRA on October 7, 2015.  Wenter Decl. Exhs. G, H.

8

On or around August 25, 2015, plaintiff informed AIS that she planned to take FMLA leave starting on October 7, 2015, until November 2, 2015. Wenter Decl. Exh. H. On September 30, 2015, AIS Human Resources sent plaintiff correspondence regarding her request for FMLA leave, a Notice of Eligibility, Rights and Responsibilities, and a Designation Notice for FMLA leave commencing on October 7, 2015, and ending on or about November 1, 2015. Wenter Decl. Exh. G; see also Cplt ¶ 12; Rodriguez Decl. ¶ 14.

By September 30, 2015, however, AIS had already determined that it would eliminate plaintiff's position. Wenter Decl. Exhs. J, K; Reichert Decl. ¶ 15. On October 23, 2015, approximately one week before plaintiff's leave was set to expire, Mr. Reichert and Ms. Morrow contacted plaintiff at home and informed her of AIS' decision to eliminate her position and end her employment. Pltf's Depo. at 121-124; Wenter Decl. Exh. L; Rodriguez Decl. ¶ 15.

On May 17, 2016, plaintiff filed a complaint of discrimination with the California Department of Fair Employment and Housing, alleging violation of the CFRA, and requested and received an immediate notice of right-to-sue.[2]

Also on May 17, 2016, plaintiff filed the original complaint in this action in Alameda County Superior Court. Plaintiff alleges that defendants terminated her position while she was out on maternity leave, in violation of the FMLA and the CFRA. Defendants removed the case on June 27, 2016, alleging federal question jurisdiction and diversity jurisdiction.

---

[2] Because the CFRA, Cal. Gov't Code § 12945.2, et seq., is part of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, et seq., a plaintiff is required to exhaust a claim under the CFRA by filing a claim with DFEH and obtaining a right-to-sue letter, just as with any FEHA claim. Flores v. Calif. Pac. Med. Ctr., 2005 WL 2043038 at *2 (N.D. Cal. Aug. 24, 2005). However, the FMLA is not enforced by the Equal Employment Opportunity Commission, but rather by the Wage and Hour Division of the U.S. Department of Labor, and does not require a plaintiff to exhaust administrative remedies. Bonzani v. Shinseki, 2011 WL 4479758 at *5 (E.D. Cal. Sept. 26, 2011). An employee seeking to enforce the FMLA has the choice of filing a complaint with the Secretary of Labor or filing a private lawsuit. 29 C.F.R. 825.400. There is no exhaustion requirement. See Sutton v. Derosia, 2012 WL 4863788 at *5 (E.D. Cal. Oct. 12, 2012).

**DISCUSSION**

A. Legal Standards

    1. Motions for summary judgment

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of L.A., 638 F.3d 703, 709 (9th Cir. 2011).

    2. Claims under the FMLA and CFRA

The FMLA and CFRA permit any eligible employee to take unpaid leave for family

care and medical leave to care for a child, parent, or spouse, or to care for his or her own serious health condition. 29 U.S.C. § 2612(a)(1); Cal. Gov't Code § 12945.2(a). An "eligible employee" is one who has been employed for at least 12 months and worked at least 1,250 hours during the previous 12-month period. 29 U.S.C. § 2611(2)(A)(i); Cal. Code Regs. tit. 2, § 11087.

The FMLA creates two interrelated substantive rights for employees. Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011) (citing Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001)); see also Richey v. AutoNation, Inc., 60 Cal. 4th 909, 920 (2015). First, an employee has the right to take up to twelve weeks of leave for the protected reasons. See 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. See 29 U.S.C. § 2614(a). Similarly, the CFRA allows an employee "to take up to a total of 12 workweeks in any 12-month period" for the protected reasons, and requires the employer to provide "a guarantee of employment in the same or a comparable position upon the termination of the leave." Cal. Gov't Code § 12945.2(a).

Subsection 2615(a) of the FMLA "sets forth two very different ways to protect these substantive rights." Sanders, 657 F.3d at 777. First, an employee can bring a "discrimination" or "retaliation" claim if the employer "'discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful'" by the FMLA. Id. (quoting 29 U.S.C. § 2615(a)(2)). Second, an employee can bring an "interference" or "entitlement" claim if the employer "'interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise' the substantive rights guaranteed by FMLA." Id. (quoting 29 U.S.C. § 2615(a)(1)).

Similarly,

> [v]iolations of . . . CFRA generally fall into two types of claims: (1) "interference" claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) "retaliation" claims in which an employee alleges that she suffered an adverse

11

employment action for exercising her right to CFRA leave. Rogers v. Cnty of L.A., 198 Cal. App. 4th 480, 487-88 (2011). The statutory authority for a CFRA "interference" claim arises from § 12945.2(t), which makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by CFRA. The statutory authority for a CFRA "retaliation" claim arises from § 12945.2(l)(1), which makes it unlawful to retaliate against any individual because of his or her exercise of the right to family care or medical leave as provided by CFRA.

The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions. See Xin Liu v. Amway Corp., 347 F.3d 1125, 1132-33 (9th Cir. 9th Cir. 2003).

B.  Defendants' Motion

In their motion, defendants seek summary judgment as to all three causes of action, or in the alternative, partial summary judgment. They argue that the first and second causes of action for violation of the FMLA/CFRA fail as a matter of law because plaintiff does not allege facts showing that defendants denied her any leave of absence to which she was entitled, or that defendants unlawfully denied her reinstatement, or that she was terminated because she exercised her right to take leave under the FMLA/CFRA.

Defendants acknowledge that plaintiff is not claiming that AIS denied her a leave of absence. Rather, defendants focus on plaintiff's contention that AIS wrongfully denied her reinstatement following her leave. Their argument is that because plaintiff's position was eliminated while she was on leave, AIS was under no obligation to reinstate her. They also briefly address the question whether plaintiff can show that she was terminated because she exercised her right to take leave under the FMLA/CFRA, but plaintiff herself does not respond to that argument. Finally, defendants seek summary judgment as to the third cause of action for wrongful termination, arguing that this claim fails because it is

12

1 based on AIS' alleged violations of the FMLA and CFRA.

2 Plaintiff does not address the three causes of action separately, but simply argues that summary judgment cannot be granted as to the FMLA claim. She notes that defendants have focused on only the fifth element of the prima facie case – that the employer denied the plaintiff FMLA benefits to which she was entitled. She contends that it is defendants' burden in this motion to show an absence of evidence to support that element of the claim, and she argues that defendants' motion should be denied because a triable issue exists with regard to the question whether plaintiff's position was in fact eliminated.

The court finds that defendants' motion must be GRANTED. As an initial matter, the court notes that plaintiff's FMLA claim appears not to be based on the "discrimination/retaliation" section of the FMLA. See 29 U.S.C. § 2615(a)(2). That is, there are no allegations in the complaint, and no arguments in plaintiff's opposition to defendants' motion, that AIS discharged plaintiff or otherwise discriminated against her for "opposing any practice made unlawful by" the FMLA. Instead, plaintiff's FMLA claim is an "interference" claim, see 29 U.S.C. § 2615(a)(1), as she alleges that defendants violated the FMLA when they failed to reinstate her to her former position.

To establish a prima facie case where the employer fails to reinstate an employee, the employee must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Sanders, 657 F.3d at 778 (citations omitted).[3] In interference claims, the employer's intent is irrelevant to a determination of liability. See Liu, 347 F.3d at 1135. Here, plaintiff has failed to establish that AIS denied her

---

[3] While the Ninth Circuit has set forth the elements necessary to establish a "prima facie case" in interference claims – which include claims of failure to reinstate – the court has also declined to analyze interference claims using the McDonnell-Douglas burden-shifting framework. See Sanders, 657 F.3d at 778. Rather, the court has indicated, an employee "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." Id. (citing Bachelder, 259 F.3d at 1125).

13

FMLA benefits to which she was entitled.

"The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends.'" Sanders, 657 F.3d at 778 (citations omitted). Thus, evidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights. See id. (citing 29 C.F.R. § 825.220(b) (explaining that any violation of the FMLA constitutes interference with rights under the FMLA)).

Nevertheless, while the FMLA created a statutory right to reinstatement after taking FMLA leave, this right is not without limits. "Nothing in [§ 2614] shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).[4] The Department of Labor ("DOL") has interpreted this part of the statute in various regulations that set forth the limitations on an employee's right to reinstatement. See Sanders, 657 F.3d at 779.

Of particular relevance here, 29 C.F.R. § 825.216 provides, in part:

> a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

---

[4] The CFRA, Cal. Labor Code § 12945.2, contains a similar provision. See Cal. Code Regs. tit. 2, § 11089.

14

> Restoration to a job slated for lay-off when the employee's
> original position is not[,] would not meet the requirements of
> an equivalent position.

29 C.F.R. § 825.216(a)(1). As the regulation makes clear, where the employer defends against an interference claim by, e.g., alleging that it had a legitimate reason not to reinstate an employee, the employer carries the burden of proof. See Sanders, 657 F.3d at 779-81. That is, it is not enough for the employer to show merely that it had "reasonable cause" for not reinstating the employee; it must go further, and show that the employee would not have been employed in the same position even if he had not taken FMLA leave. Id. at 780-81 (citing 29 U.S.C. §§ 2614(a)(1)(A), (a)(3)(B)).

Plaintiff worked for AIS as an Employment Specialist/Recruiter beginning on October 7, 2014. AIS has a supplemental labor contract with LLNS at the LLNL. Under the agreement, AIS provides supplemental labor to LLNS. AIS has a Project Management Office on-site at LLNL. Plaintiff worked for the Project Management Office. On June 5, 2015, she went out on disability leave due to her pregnancy.

AIS has demonstrated, through the testimony of Mr. Reichert, that shortly after plaintiff went out on pregnancy leave, but well before she became eligible for FMLA leave, AIS learned that its customer, LLNS, had been converting AIS' supplemental labor personnel to its own employees at an unprecedented rate. Mr. Reichert first became aware of this activity by LLNS in June 2015 (the same month that plaintiff went out on pregnancy leave). AIS could not stop the conversions, and it did not receive compensation from LLNS for the lost headcount of its supplemental labor personnel.

Mr. Reichert explained that the total number of supplemental labor employees hired directly by the LLNS customer represented a 420% increase over the previous four-year running average. As a result, it became necessary that he mitigate the conversions, which impacted the Project Management Office's revenue, AIS' supplemental labor headcount, and the appropriate size of the office's support staff. Mr. Reichert explored various options for restructuring the Project Management Office staff and ultimately concluded that the most practical, efficient, and financially sound solution was to

eliminate plaintiff's position.

The undisputed evidence shows that AIS granted plaintiff's request for FMLA leave, but that while she was out on leave it ended plaintiff's employment because it eliminated her position. The FMLA requires that an employer reinstate an employee after taking such leave, so long as the employee would still be employed in the position had she not taken FMLA leave. Sanders, at 780-81 (citing 29 U.S.C. § 2614(a)(1)(A), (a)(3)(B)). The court thus finds that AIS has carried its burden to show that plaintiff would not have been employed in the same position even had she not taken FMLA leave, and defendants are therefore entitled to summary judgment on the first cause of action.

Plaintiff argues that during the eight months she worked at AIS (before she went out on leave), she did not perform many of the job duties listed in the job description for the Employment/Specialist Recruiter position, and that of the duties she did perform, the same duties were performed by Mr. Menig. As described above in the "Background" section, plaintiff focuses on seven duties that defendants list in their motion – two of which (determining prevailing wages and preparing justification packets) she claims were standard recruiter duties, which both she and Mr. Menig performed during the time she was working at AIS; four of which (leveling the position, leveling the salary, determining the classification of a position, and conducting desk audits) she claims were employment duties, which she herself never performed during that time, but which Ms. Miller did perform; and one of which (conducting new hire orientations) she claimed she performed as an assistant to Ms. Morrow.

Plaintiff argues that there was one "technical recruiter" position that ran from Mr. Andrade, to plaintiff, to Mr. Menig, and that the only difference between her job and Mr. Menig's was that once a week, for two hours, she assisted Ms. Morrow with new hire orientations. However, the fact that she and Mr. Menig may have performed some of the same duties does not mean that the Employment Specialist/Recruiter position involved the exact same duties as the Junior Recruiter position.

Indeed, a review of the two job descriptions makes clear that while many of the

16

same tasks were assigned to both positions, the Employment Specialist/Recruiter position encompassed many of the recruiting duties of the Junior Recruiter position, but not the reverse.  The Junior Recruiter job description lists duties that appear to be solely connected to recruiting, while the Employment Specialist/Recruiter job description includes many employment-related duties.  Moreover, the job description for the Employment Specialist/Recruiter position lists supervisory duties and requirements for particular expertise that are not listed as part of the Junior Recruiter position.  See Reichert Decl. Exhs. 1 & 2.  The difference between the two positions is also reflected in the fact that the salary for the Employment Specialist/Recruiter position amounted to considerably more than the wage-determined hourly pay rate for the Junior Recruiter position.

Plaintiff and Mr. Menig may have performed some of the same recruiting tasks, but it does not follow that AIS could not as a matter of law eliminate plaintiff's position.  The evidence shows that plaintiff was hired to fill the newly-created Employment Specialist/Recruiter position at a time when Mr. Reichert expected to increase AIS' headcount of supplemental labor provided to LLNS, and to transition Ms. Miller's employment-side responsibilities to the new position, in order to provide Ms. Miller with more time to work outside the office in a strategic capacity to establish and build relationships with LLNS customers.  As plaintiff's employment advanced, the employment-side responsibilities were transitioned to plaintiff.  For example, she began assisting with new-hire orientations. The fact that as of the time she went out on pregnancy leave (eight months after beginning her employment at AIS) there were employment-side duties that were still being performed by Ms. Miller is not evidence that plaintiff was hired as a Junior Recruiter or that she and Mr. Menig were performing the same job.

Defendants also argue that they are entitled summary judgment on the second cause of action.  The FMLA and CFRA are "substantively identical," and California state courts have held that the same standards apply (at least as to interference claims).

17

1 Rogers, 198 Cal. App. 4th at 491-92; see also Richey, 60 Cal. 4th at 919. Accordingly, defendants assert, plaintiff's CFRA claim fails for the reason explained above; namely, AIS lawfully did not reinstate plaintiff to her position, because AIS eliminated her position during her pregnancy leave and established that she would not have been employed even if she had not taken leave. See Cal. Code Regs. tit. 2, 11089.

Notwithstanding that plaintiff alleges separate causes of action in the complaint for violation of the FMLA and violation of the CFRA, plaintiff has made no argument in her opposition to defendants' motion that in any way distinguishes the two claims. Her entire opposition focuses on the FMLA claim (or on the joint FMLA/CFRA claim), and she does not otherwise mention the CFRA or argue that she is asserting a retaliation claim under the CFRA.

In any event, to the extent that the complaint can be construed as asserting a claim of retaliation under the CFRA, that claim fails because plaintiff has not established a prima facie case of retaliation. The elements of a claim for retaliation in violation of CFRA are (1) the defendant was an employer covered by CFRA, (2) the plaintiff was an employee eligible to take CFRA leave, (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose, and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because she exercised her right to CFRA leave. Dudley v. Dept. of Transportation, 90 Cal.App.4th 255, 261 (2001); Cal. Code Regs. tit. 2, § II 094 ("employers cannot use the taking of CFRA leave as a negative factor in employment actions").

Here, plaintiff has not established that she suffered an adverse employment action because she exercised her right to take CFRA leave. The evidence shows that plaintiff went out on pregnancy disability leave on June 8, 2015; that in June 2015, Mr. Reichert first discovered that LLNS was converting a significant number of AIS' contract labor positions, with the result that AIS was beginning to lose significant revenue; that AIS was compelled to restructure the Program Management Office; and that Mr. Reichert determined that the best solution was to restructure the office by eliminating the

18

Employment Specialist/Recruiter position, transitioning duties back to Ms. Miller, and assigning Mr. Menig (or another employee) the remaining recruiter duties.

Evidence of corporate restructuring and job eliminations suffice to meet an employer's burden of producing substantial evidence of a legitimate, nondiscriminatory reason for its actions. See Rogers, 198 Cal. App. 4th at 490-91. As explained above, AIS had a legitimate business reason for eliminating plaintiff's position, which was unrelated to plaintiff's leave of absence. Plaintiff testified in her deposition that she had no personal knowledge about why the Project Management Office decided to eliminate her position, that no one told her that her position was eliminated because she had taken personal leave, and that no one from the Project Management Office ever said anything to her that she regarded as discriminatory. Pltf's Depo. at 124,136-137.

Plaintiff has provided no evidence supporting her claim that she was not reinstated in her former position because she took family leave, or even supporting an inference that AIS considered her leave in making the restructuring decisions that were necessitated by LLNS's headcount reduction. See Haley v. Cohen & Steers Capital Mgmt., Inc., 871 F. Supp. 2d 944, 953 (N.D. Cal. 2012) ("A plaintiffs subjective belief that his termination was unnecessary or unwarranted is not sufficient to create a genuine issue of material fact."); Houston v. Regents of Univ. of Cal., 2006 WL II41238, at *24 (N.D. Cal. May 1, 2006) ("A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action.").

Plaintiff testified at her deposition that Mr. Reichert informed her that AIS was ending her employment because her position was being eliminated; neither he nor anyone else told her it was because she took a leave of absence. Plaintiff also admitted that no one at the Project Management Office said anything discriminatory regarding the fact that she took a leave. Plaintiff's subjective belief that it was unfair or unlawful for AIS to end her employment does not undermine AIS' stated reason for eliminating her role. See, e.g., Rivera v. FedEx Corp., 2013 WL 6672401, at *5, *7 (N.D. Cal. Dec. 18, 2013).

As plaintiff cannot present evidence sufficient to draw a reasonable inference that AIS' stated reason for eliminating her role was pretextual, she cannot establish the requisite casual connection for her CFRA retaliation claim. Accordingly, the court grants defendants' motion as to the second cause of action.

The court grants defendants' motion as to the third cause of action for wrongful termination because plaintiff cannot establish that her discharge violated any public policy and because her claim fails as a matter of law for the reasons set forth above. Discharge in violation of the CFRA constitutes wrongful discharge in violation of public policy. See Nelson v. United Techs., 74 Cal. App. 4th 597, 612 (1999). As its federal counterpart, violation of the FMLA also constitutes a violation of public policy. Liu, 347 F.3d at 1137-38. The third cause of action for wrongful termination in violation of public policy is dependent upon the allegations and claims underlying her FMLA and CFRA claims, and therefore rises and falls with those two claims. In general, a claim for violation of public policy does not exist against employers who have not violated the law. Jennings v. Marralle, 8 Cal. 4th 121, 135 (1984); see also Yau v. Saint Francis Mem'l Hosp., 2015 WL 3639521, at *12 (N.D. Cal. June 11, 2015).

## CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is GRANTED. The dates previously set for the pretrial conference and the trial are VACATED.

**IT IS SO ORDERED.**

Dated: May 19, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge